**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD T. CORVETTI,**

                                         **Appellant,**

                        **v.**                                         **1:06-CV-537**
                                                                        **(FJS)**

**PAUL S. HUDSON,**

                                  **Appellee.**
_____

**APPEARANCES**                                 **OF COUNSEL**

**DONOHUE, SABO, VARLEY &**                      **KENNETH G. VARLEY, ESQ.**
**ARMSTRONG, P.C.**
24 Aviation Road
P.O. Box 15056
Albany, New York 12212-5056
Attorneys for Appellant

**PAUL S. HUDSON, ESQ.**
Crofton, Maryland 21115
Appellee *pro se*

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Although this case has a long history, this decision requires a review of only a few facts.[1]

On November 20, 2002, Judge McAvoy issued a Corrected Order for Partial Settlement on

Appeal, approving the parties' Settlement Agreement resolving the case's 11 U.S.C. § 523(a)

claims.  This Settlement Agreement is based, in large part, on the parties' simultaneously

_____

        [1] The facts are undisputed and are contained in the parties' Statement of Uncontested
Facts.  *See* Dkt. No. 4 at Pt. 18.

executed release and Appellee Hudson's January 21, 1999 assignment to Appellant Corvetti of

an interest in all wrongful death lawsuits against the Government of Libya arising from the death

of his daughter in the 1988 Pan Am Flight 103 explosion over Lockerbie, Scotland (the "Libyan

Lawsuits").

     The parties dispute the import of several provisions of the Settlement Agreement.

Paragraph 9(d)(viii) of the Settlement Agreement provides that

> [i]t is therefore the agreement of the parties that Corvetti shall be
> entitled to receive all of Hudson's interest in all such lawsuits
> against Libya up to the amount of $385,501.24 with interest of 9%
> accruing as of November 12, 1999, and that Hudson will take all
> necessary steps to permits (sic) Corvetti to collect and receive such
> amounts and shall take no action whatsoever to interfere with
> Corvetti's rights to collect and receive such amounts.

*See* Statement of Undisputed Facts at ¶ 45.  In addition, paragraph 9(d)(ix) provides that

> Hudson expressly waives any claim that any discharge he receives
> in bankruptcy, any provision of this Agreement, or any Release
> executed in connection with this Agreement, affects in any way
> Corvetti's right to receive all Hudson's interest in any lawsuit
> whatsoever against the government of Libya arising from the death
> of Hudson's daughter, Melina Hudson.

*See id.* at ¶ 46.  Moreover, paragraph 2(a)  provides that

> *Corvetti* . . . do[es] hereby remise, release and forever discharge
> *Hudson* . . . of and from all, an [sic] manner of action and actions,
> cause and causes of action, suits, debts, dues, sums of money,
> accounts, reckonings . . . which said Corvetti . . . ever had, now
> have or which their respective successors . . . hereafter can, shall or
> may have for . . . whatsoever except <u>Claim #1 and Claim #2</u> from
> the beginning of the world to the date of this Release first written
> above.

*See id.* at ¶ 37.  Finally, paragraph 2(c) provides that,

> [i]n any event, Corvetti shall take no action at any time to
> prosecute, collect or otherwise use legal process in regards to
> Claim #2 and Claims [sic] #1, except as regards enforcing his right
> to receive proceeds from the Libyan lawsuits, as later defined
> herein, from Hudson and his respective agents, employees,
> successors, assigns, heirs, executors, and administrators <u>except the</u>
> <u>Estate</u>.  It is the intent of this provision that opposition,
> controversy and litigation amongst Corvetti and Hudson shall
> cease in all venues and for all causes except those arising from this
> Agreement or the Assignment, if any.[2]

*See id.* at ¶ 40.

As noted in a related consolidated action before the Court, *Hudson v. Corvetti*, 1:05-CV-472, 1:05-CV-560, Appellant Corvetti's Bankruptcy Court Complaint asserted three causes of action for (1) a declaration that he could oppose Appellee Hudson's discharge; (2) a declaration that the parties' Settlement Agreement was void; and (3) an order enjoining the state court from adjudicating Appellee Hudson's breach-of-contract claim for Appellant Corvetti's alleged violation of the Settlement Agreement.  In a bankruptcy appeal related to the first cause of action, the Court reversed the Bankruptcy Court and declared that Appellant Corvetti could not oppose Appellee Hudson's discharge pursuant to the Settlement Agreement.

Currently before the Court are Appellant Corvetti's appeal from Judge Littlefield's February 15, 2006 Memorandum-Decision and Order granting Appellee Hudson's motion for summary judgment and dismissing Appellant Corvetti's second cause of action and Appellee

---

[2] Claim #1 and Claim #2 refer to Appellant Corvetti's claims as a creditor against Appellee Hudson.

Hudson's request for litigation expenses and sanctions.[3]


## II. DISCUSSION

**A.     Appellant Corvetti's appeal**

Appellant Corvetti asserts that Judge Littlefield erred because the Settlement Agreement constitutes a reaffirmation agreement that was not ratified pursuant to 11 U.S.C. § 524.  In support of this assertion, he claims that Appellee Hudson assumed personal liability in the document because he was required to pay interest on the principal sum of $385,501.24. Moreover, he contends that, since the agreement authorizes litigation for violation of the Settlement Agreement, it creates potential personal liability.  Appellant Corvetti also contends that Judge Littlefield's decision is unfair because he has no way to collect additional funds from Appellee Hudson.

"A reaffirmation agreement is a voluntary agreement a debtor may make with a creditor to reassume the in personam liability of an otherwise dischargeable debt."  31 Williston on Contracts § 78:25 (4th ed. 2005) (footnote omitted); *see Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 366 (E.D.N.Y. 2001) ("[R]eaffirmation agreements consign the debtor to personal

---

[3] A district court reviews a bankruptcy court's factual findings on appeal to determine whether they were clearly erroneous.  *See In re BuddyUSA, Inc. & AbovePeer, Inc.*, Nos. 1:03CV1038, 1:03CV1039, 2007 WL 949655, *2 (N.D.N.Y. Mar. 29, 2007) (citing Fed. R. Bankr. P. 8013).  However, a district court reviews conclusions of law *de novo*.  *See id.* (citations omitted).

This dispute involves interpretation of the Settlement Agreement, and Judge Littlefield determined as a matter of law that it does not amount to a reaffirmation agreement.  Therefore, the Court reviews this conclusion of law *de novo*.

liability on the debt.").

Upon reviewing the Settlement Agreement, the Court finds that nothing therein suggests that Appellee Hudson assumed personal liability for his debt to Appellant Corvetti.  To the contrary, the terms of the Settlement Agreement indicate a *quid pro quo* exchange in which Appellant Corvetti essentially agreed to release certain claims against Appellee Hudson in consideration for a payment of $60,000, and an assignment of Appellee Hudson's interest in the Libyan Lawsuits up to $385,501.24.  The Settlement Agreement does not state that Appellant Corvetti could seek to impose personal liability in the event that proceeds from the Libyan Lawsuits were less than $385,501.24.  In fact, although the Settlement Agreement provides for the event that the judgments exceed the assigned interest, it is silent concerning the opposite contingency.  Moreover, paragraphs 2(a) and (c) of the Settlement Agreement, as noted above, indicate that the parties intended to effect a broad settlement and release to end their often bitter dispute.

To support his assertion that the Settlement Agreement imposes personal liability on Appellee Hudson, Appellant Corvetti relies on paragraph 9(b) of the Settlement Agreement, which states, in pertinent part, that "[t]he parties may litigate any issues arising from this Agreement."  *See* Record on Appeal at A-4.  This provision, Appellant Corvetti asserts, shows that he could hold Appellee Hudson personally liable for breaching the Settlement Agreement. In addition, Appellant Corvetti asserts that the Settlement Agreement holds Appellee Hudson personally liable for interest payments.  *See* Appellant's Brief at 15, 19.

These assertions miss the point.  The Settlement Agreement would only constitute a reaffirmation agreement if Appellee Hudson assumed personal liability for his otherwise

dischargeable debt.  Even if the Settlement Agreement provides that Appellant Corvetti can hold Appellee Hudson personally liable for breaching the Settlement Agreement or for wrongfully withholding interest payments, this personal liability is ancillary to the preexisting debt.  The Settlement Agreement contemplates no personal liability for the debt itself.  To the contrary, the agreement shows a different situation, in which Appellee Hudson supplies the Libyan Lawsuits as the exclusive *res* from which he will satisfy his debt to Appellant Corvetti, effectively ending any personal liability for the debt that might have remained.  Accordingly, the Court finds that the Settlement Agreement is not a reaffirmation agreement and **AFFIRMS** Judge Littlefield's February 15, 2006 Memorandum-Decision and Order.

**B.      Appellee Hudson's request for litigation expenses**

Concerning Appellee Hudson's request for litigation expenses, the Settlement Agreement includes the following provision:

> 7)      Default: Time is of the essence in all regards.  Performance must be complete; substantial performance is insufficient. In the event of litigation or collection, the party that loses agrees to pay the other party's out-of-pocket expenses including reasonable legal fees.

*See* Dkt. No. 4 at Pt. 6 at Exhibit 1 at A-4.  However, the Court finds that this provision does not apply for two reasons.  First, paragraph 9 of the Settlement Agreement expressly authorizes a broad range of litigation related to the Settlement Agreement:

> 9)      Notwithstanding anything herein or in any other agreement . . .

-6-

> b) The parties may litigate any issue arising from this
> Agreement.  Any breach of this Release is a breach of this
> Agreement.

*See id.*  Second, although paragraph 7 of the Settlement Agreement provides for the payment of

litigation expenses, that paragraph is labeled "<u>Default</u>."  This heading implicitly limits the

payment of litigation expenses to situations in which one party defaults on his obligations

pursuant to the Settlement Agreement: *i.e.*, Appellee Hudson failing to make the $60,000

payment and assign his interest in the Libyan Lawsuits, or Appellant Corvetti failing to abide by

the release.  Since paragraph 9 expressly authorizes litigation arising out of the Settlement

Agreement itself, notwithstanding any other provision, a suit to clarify the legal status of the

Settlement Agreement cannot be considered a default and, therefore, cannot support imposing

litigation expenses on the losing party.[4]  Accordingly, the Court **DENIES** Appellee Hudson's

request for litigation expenses.


**C.     Appellee Hudson's request for sanctions**

     Concerning Appellee Hudson's request for sanctions, in a bankruptcy appeal, a court can

impose sanctions pursuant to Bankruptcy Rule 9011 and its inherent authority to supervise and

control its proceedings.  *See Saratoga Inv. Co., Inc. v. O'Connor*, No. 97-CV-729, 1997 WL

473066, *1 (N.D.N.Y. Aug. 7, 1997) (citations omitted).  Pursuant to Bankruptcy Rule 9011, a

party signing a document certifies that the filing is not frivolous and that it is not filed for an

---

     [4] The Court notes that the Settlement Agreement also contains the following statement:
"Paragraph headings are for convenience only and do not necessarily indicate the legal intent of
the paragraph."  *See* Dkt. No. 4 at Pt. 6 at Exhibit 1 at A-4.

improper purpose, such as to harass, cause unnecessary delay, or cause a needless increase in litigation costs.  *See id.* (citation omitted).  Similarly, under a court's inherent authority, "sanctions may be imposed for commencing or continuing an action in 'bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quotation omitted).  A court may also sanction a party for filing an appeal in bad faith.  *See id.* (citation omitted).  However, in a similar context, the Second Circuit routinely warns *pro se* litigants before imposing sanctions for filing a frivolous appeal.  *See, e.g., Farrell v. Pataki*, 205 F.3d 1322, No. 99-7680, 1999 WL 1489806, *1 (2d Cir. Dec. 29, 1999); *Baba v. Japan Travel Bureau Int'l, Inc.*, 166 F.3d 1199, No. 98-7127, 1998 WL 852610, *1 (2d Cir. Dec. 1, 1998).  Although Appellant Corvetti's appeal might be considered frivolous because the Settlement Agreement is clearly not a reaffirmation agreement, the Court is mindful of the fact that Appellant Corvetti is a *pro se* litigant.  Moreover, the distinction between assuming personal liability for the debt and assuming personal liability for breach of the Settlement Agreement, noted above, requires some legal sophistication.  Finally, Judge Littlefield's discussion of the issue was markedly brief and did not explain the distinction in detail.  Therefore, the Court **DENIES** Appellee Hudson's request for sanctions.

### III. CONCLUSION

Accordingly, having reviewed the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Bankruptcy Court's Memorandum-Decision and Order, dated February 15, 2006, is **AFFIRMED**; and the Court further

-8-

**ORDERS** that Appellee Hudson's requests for litigation expenses and sanctions are **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court enter a Revised Bankruptcy Appeal Scheduling Order, Notice of Briefing, in accordance with this District's Local Rule 76.2(b), on the Docket of the related litigation between these parties, *Hudson v. Washington 1993, Inc.*, 1:06-CV-253, requiring that Appellant Hudson file his brief within **thirty (30) days** of the date of this Order, that Appellee's brief is due **forty (40) days** from the filing of Appellant's brief and that Appellant's reply brief is due **twenty (20) days** from the filing of Appellee's brief.[5]

**IT IS SO ORDERED.**

Dated: July 9, 2007
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[5] The Court notes that this briefing schedule complies with the terms of the March 30, 2006 Order that the Court entered in *Hudson v. Washington 1993, Inc.*, 1:06-CV-253, in which the Court granted the parties' request that "Mr. Hudson's brief in *Hudson v. Washington 1993, Inc.* be filed thirty (30) days after a decision is rendered in *Hudson v. Corvetti*, and that the response and reply briefs follow pursuant to the bankruptcy rules." *See Hudson v. Washington 1993, Inc.*, 1:06-CV-253, at Dkt. No. 13.